THE LOUISIANA LAND AND EXPLORATION COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8849.   Promulgated August 8, 1946.

*James H. Yeatman, Esq.*, for the petitioner.
*D. Louis Bergeron, Esq.*, for the respondent.

512

**OPINION.**

HILL, *Judge*: *Issue 1.*—As is conceded by respondent on brief, the depletion issue involves the same type of payment to this petitioner under the same contract as was considered with respect to the years 1939 and 1940 in *Louisiana Land & Exploration Co.*, 6 T. C. 172. In that proceeding, the opinion in which was promulgated after this case was submitted, we sustained this petitioner's deduction of percentage depletion on such payment on the authority of *Kirby Petroleum Co.* v. *Commissioner*, 326 U. S. 599. We accordingly hold here that petitioner properly deducted as depletion in 1941 and 1942 27½ per cent of the amounts received from Texas in those years as 8⅓ per cent of the net profits from the lease operations.

*Issue 2.*—While petitioner concedes on brief that the $6,000 paid in 1941 for attorneys' fees in connection with the McEnery litigation must be capitalized as an additional investment in the land which was the subject of the litigation, it contends that the $25,000 cash payment to Texas was properly capitalized as the cost of acquisition from Texas of the McEnery heirs' lease. It is then argued that the recognition by the McEnery heirs in 1941 of petitioner's title to the land in dispute rendered the lease valueless, with the result that petitioner then sustained a deductible loss in the amount of the undepleted cost thereof. Respondent's position is that the $25,000 was expended in defense of petitioner's title to the disputed lands and is therefore properly capitalized to that interest and brings petitioner no tax benefit except through depletion deductions or as a loss deduction when the land is disposed of.

We think a realistic view of the various transactions resulting from the claim of title by the McEnery heirs compels the conclusion that the $25,000 represents an additional investment by petitioner in the land. Prior to and during the assertion of title by the McEnery heirs petitioner insisted that it was the title owner. Petitioner paid, among other amounts, the $25,000 here in question to rid itself of the difficulties created by the disputants. The McEnery heirs received, among other amounts, a $25,000 cash payment. It is stipulated here that "the basis for the [compromise] settlement was that the 'McEnery heirs' were to retain the $25,000 cash payment * * *." Although the agreement of compromise contains no provision with respect to this cash payment, the history of the controversy between the parties establishes it as part of the value received by the heirs as a result of their assertion of title. In our view the $25,000 must be regarded as part of the consideration paid by petitioner to quiet the claim of the heirs by securing from them a recognition of its ownership of the land, and it must therefore be capitalized to the land. *Murphy Oil Co.* v. *Burnet,* 55 Fed. (2d) 17, 25.

Petitioner urges on brief that the $25,000 payment is in an entirely different category from the amounts paid directly in the conduct and settlement of the litigation. We have not overlooked the fact that petitioner actually made the payment in question to Texas as reimbursement to it of the amount paid the McEnery heirs and that Texas conditionally agreed to assign the McEnery lease to petitioner. It is also true that the payment and the agreement predated the final settlement of the controversy and that the McEnery heirs were not parties to the former. As indicated above, however, we are of the opinion that the acts and motives of petitioner, Texas, and the McEnery heirs with respect to this land must be viewed in their relation to the title dispute and their effect upon its outcome. Cf. *Hoboken Land &*

*Improvement Co.*, 46 B. T. A. 495, 511; affirmed on other issues, 138 Fed. (2d) 104; *Ravlin Corporation*, 19 B. T. A. 1112, 1115; *Ed Foster*, 19 B. T. A. 958, 961. The success of petitioner's overall effort to protect its investment in the land was undoubtedly due in part to the $25,000 cash payment. We are not called upon to consider the tax consequence of the payment under circumstances other than those which actually occurred and, even aside from the fact that petitioner never acquired the McEnery lease, we are not persuaded that the immediate circumstances surrounding the outlay of the $25,000 afford a sound basis for treating it differently from the expenditures which petitioner concedes must be capitalized to the land as the cost of perfecting title thereto. Cf. *Burton-Sutton Oil Co.* v. *Commissioner*, 150 Fed. (2d) 621; certiorari denied on this issue, 326 U. S. 755, and cases there cited.

We accordingly hold that respondent correctly disallowed the deduction of $25,000 as a loss sustained in 1941. As is conceded by petitioner, the disallowance of the deduction of $6,000 attorneys' fees was also proper and we so hold.

*Issue 3.*—This issue involves the deductibility of an amount spent by petitioner in 1941 for a geophysical survey of property under lease to it at the time the survey was made. Petitioner contends that the total amount is deductible under section 23 (a) (1) (A) of the Internal Revenue Code as an ordinary and necessary business expense. In the alternative, petitioner argues that all of such amount is so deductible except that attributable to the 2,080-acre lease acquired after the survey was made. Respondent's position is that the entire expenditure is "in the nature of an addition to lease cost" and, under section 24 (a) (2) of the Internal Revenue Code and section 19.24–2 of Regulations 103, must be capitalized.

Section 24 (a) (2) prohibits the deduction of amounts paid "for permanent improvements or betterments made to increase the value of any property or estate." Section 19.24–2 of Regulations 103 provides that "amounts paid for increasing the capital value * * * of property are not deductible from gross income." Petitioner contends that section 24 (a) (2) does not prohibit the deduction claimed. It is argued that the geophysical survey was not an improvement or betterment of its property, because it added nothing tangible thereto, and that it did not and could not increase the value of the property for oil-producing purposes because there was just as much oil and gas on the land prior to the survey as there was afterwards.

We deem it unnecessary to discuss either the arguments of petitioner with respect to the scope of section 24 (a) (2) or those as to the "ordinary and necessary" character of the expenditure in question, for in our view the geophysical expense here involved is capital in

nature and is for that reason not deductible under section 23 (a) (1) (A). The distinction between capital expenditures and business expenses is generally made by looking to the extent and permanency of the benefit derived from the outlay. The benefit from business expenses is generally realized and exhausted within a year and the expense is therefore said to be of a recurring nature. See *W. B. Harbeson Lumber Co.*, 24 B. T. A. 542, 550. On the other hand, an item of expense is of a capital nature where it results in the taxpayer's acquisition or retention of a capital asset, or in the improvement or development of a capital asset in such a way that the benefit of the expenditure is enjoyed over a comparatively lengthy period of business operation. See *Commissioner* v. *Boylston Market Assn.*, 131 Fed. (2d) 966; *Clark Thread Co.* v. *Commissioner*, 100 Fed. (2d) 257; *Parkersburg Iron & Steel Co.* v. *Burnet*, 48 Fed. (2d) 163; *James M. Osborn*, 3 T. C. 603. A capital expenditure is thus nonrecurring, even though many similar expenditures are made by the taxpayer. The one-year period referred to above is not, of course, a touchstone to be arbitrarily applied, but is resorted to in definition as an aid in expressing the distinction. It should also be observed that in exceptional cases certain expenses which might never recur have been held to be deductible business expenses. See, e. g., *Kornhauser* v. *United States*, 276 U. S. 145. The theory of those decisions, however, suggests no conflict with the basic nature of a capital expense as stated above, and the item here involved is not similar to the items considered in those cases.

As to the function and frequency of geophysical surveys in the oil-producing business, we can only rely here upon such inferences as may be drawn from the portion of the stipulation which sets forth the technical procedure by which such a survey is made. On this issue, the record contains no evidence other than the stipulation. We think, however, that the agreed facts do justify a conclusion in accord with petitioner's statement on brief that the purpose of this geophysical survey was to determine whether the land contained subsurface structures sufficiently high so as to make drilling for oil economically feasible.

It thus appears that the results of this survey were to guide petitioner in determining generally whether and to what extent these large areas of land should be explored by drilling wells. Whether or not the scientific knowledge gained from the survey indicated that drilling would be successful or unsuccessful, it was undoubtedly the information upon which would be based further tests and potential drilling operations during the entire period of petitioner's exploitation of the land for oil and gas. Cf. *Parkersburg Iron & Steel Co.* v. *Burnet*, *supra*, at page 165. This survey was not connected with the drilling of any particular well or wells and was not confined to any restricted area

which had been tentatively singled out as the location of a well. Under these circumstances it seems abundantly clear that the survey was the first step in the over-all development for oil of these tracts of land and that the benefit derived from the expenditure was to be enjoyed by petitioner in its business during the entire useful life of the asset being developed. Cf. *Repplier Coal Co.* v. *Commissioner*, 140 Fed. (2d) 554; certiorari denied, 323 U. S. 736; *Rialto Mining Corporation*, 25 B. T. A. 980, 985. It is well settled that development expenses such as the platting, mapping, and subdividing of a tract of land held for sale must be capitalized and treated as an adjustment of the taxpayer's basis for such property. *Mellie Esperson Stewart*, 35 B. T. A. 406, 412; *Frishkorn Real Estate Co.*, 15 B. T. A. 463, and we are unable to perceive any significant difference between such expenses and the one involved here. For these reasons we conclude that the geophysical expense in question is a capital expense.

Petitioner suggests on brief that geophysical expenses are deductible by analogy to the deduction of costs for geological work in preparation for the drilling of wells. Such a deduction is granted taxpayers at their option by section 29.23 (m)–16 (*a*) (1) of Regulations 103, which, of course, does not establish that such geological expense is within the scope of section 23 (a) (1) (A). Indeed, it may be questioned whether the existence of the option does not indicate that all geophysical expenses incurred in preparation for the drilling of wells, which are capital assets, are capital in nature. So broad a question is not now before us, however, and we express no opinion with respect to it. See *C. M. Nusbaum*, 10 B. T. A. 664; *Seletha O. Thompson*, 9 B. T. A. 1342. Petitioner does not contend that the expenditure here involved is deductible under the option accorded by the regulations, and if such contention were made we should decline to adopt it. The option is directed to the costs of preparations for the drilling of particular wells after the drilling has been at least tentatively decided upon, which preparations are far removed from over-all geophysical exploration such as we are here considering.

We hold that the petitioner's expenditure for geophysical explorations in 1941 on the leases held from Louisiana Furs, Inc., is not deductible as business expense.

*Issue 4.*—Petitioner contends that its lessee's completion of the dry hole on Rosedale Plantation in 1942 determined that the mineral rights in that land were valueless, and that it thereby sustained a deductible loss in the amount of the portion of the purchase price of the fee which is allocable to those rights. Respondent argues, first, that the completion of the dry hole did not establish the worthlessness of the land for oil or gas production and, secondly, that even if it did, no deductible loss was sustained thereby, since petitioner re-

tained the fee title to the land. We find it unnecessary to consider the probative value of the Benedum dry hole as to the worthlessness of Rosedale Plantation for oil and gas production, for, even if such worthlessness were proved, we could not agree that petitioner sustained the deductible loss claimed.

Petitioner purchased Rosedale Plantation in 1936 for $30,000 and still owns it, surface and subsurface. Petitioner hoped, and no doubt believed, at the time of purchase that the land was oil or gas bearing, and the amount of the purchase price reflected this possibility. In 1942, we assume *arguendo*, it became clear that no oil or gas may ever be profitably recovered from Rosedale. On these facts, petitioner asks us to conclude that it has sustained a deductible loss.

In our view, *Coalinga-Mohawk Oil Co.*, 25 B. T. A. 261; affd., 64 Fed. (2d) 262; certiorari denied, 290 U. S. 637, disposes of this issue in favor of respondent. The taxpayer there purchased a tract of land in 1918 for $80,000, solely as an oil prospect, and retained title to the land until 1923. The respondent admitted in that case that in 1921 it was determined that the land contained no oil and was worth only $2,000. We held that no part of the purchase price was deductible by the taxpayer in 1921 as a loss sustained in that year, since only a reduction in value, and not worthlessness, had been shown.

On brief petitioner has attempted to distinguish the facts in the *Coalinga* case from those here, but we find no significance in whatever difference there may be. It is also argued that that decision and an earlier one to the same effect in *Fred C. Champlin*, 1 B. T. A. 1255, are now outmoded because:

The rule to be deduced from the more recent cases is that where worthlessness of real property, including a mineral interest, is established by some identifiable event occurring in the year the loss is claimed, it is allowable as a deduction without the taxpayer having divested himself of legal title to the property. * * *

That rule seems to be correct, but in our view it does not conflict with the principle of the *Coalinga* case or authorize the deduction claimed by petitioner. In *C. C. Harmon*, 1 T. C. 40, where we held that disposal of worthless oil and gas royalties was not a prerequisite to deduction of the unrecovered cost thereof, it was made clear that the rationale of the rule stated by petitioner is to be found in the opinion of the Supreme Court in *Lucas* v. *American Code Co.*, 280 U. S. 445, as follows:

Generally speaking, the income tax law is concerned only with realized losses * * *. Exception is made, however, in the case of losses which are so reasonably certain in fact and ascertainable in amount as to justify their deduction, in certain circumstances, before they are absolutely realized. * * * The general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test. * * *

Petitioner's position suffers, not from its failure to quitclaim its rights to any oil or gas in Rosedale, but from its failure to come within the exception to the restriction of deductible losses to those "absolutely realized." We find in *Perkins* v. *Thomas*, 15 Fed. Supp. 356; modified, 86 Fed. (2d) 954; affirmed on another issue *sub nom Thomas* v. *Perkins*, 301 U. S. 655, cited by petitioner, no substitute for a compliance with the general requirement that losses be so guaranteed to be deductible.

In the *Harmon* case, and in each of the similar cases cited by petitioner, the taxpayer proved that the asset involved was worthless for all practical purposes and it was held that disposal thereof was unnecessary to establish the certainty or the amount of the loss. Such a situation is far different from that here. The record shows and we have found as a fact that Rosedale Plantation had substantial value in 1942. But, cf. *Bickerstaff* v. *Commissioner*, 128 Fed. (2d) 366, and *Rhodes* v. *Commissioner*, 100 Fed. (2d) 966. It is by no means clear that even the subsurface was valueless, for it had apparently never been explored for valuable deposits other than oil or gas, and prior to the disposal of the land by petitioner some known but presently worthless deposits may yet come to have value as the result of newly discovered uses therefor. Petitioner has not even shown either that Rosedale Plantation was worth any less in 1942 than the $30,000 acquisition price, or that the "mineral rights" therein were worth less in 1942 than the $15,000 they were stipulated to be worth in 1936. The most that this record tends to show, and we do not decide that it shows that, is that Rosedale Plantation had no value for one particular purpose—the production of oil or gas. We can not conclude from such a showing that a loss by petitioner with respect to Rosedale was reasonably certain in fact in 1942, or ascertainable in amount.

We think the *Coalinga* case is unimpaired in authority by subsequent decisions and, had petitioner not strenuously urged its reconsideration, we should have disposed of this issue by merely adopting the forceful reasoning of that opinion. We can, in addition, foresee innumerable administrative difficulties as a consequence of allowing a taxpayer, upon showing that an asset owned by him is valueless for one of several purposes for which it was acquired, to deduct the part of the purchase price which might be apportioned to that purpose. Moreover, to permit such a deduction would be to allow the taxpayer to make one asset into as many as there were contemplated uses for it, and would have the effect in many cases of nullifying the established rule that mere shrinkage in the value of an asset prior to closing of the transaction with respect thereto does not give rise to a deductible loss. See *Edith K. Findley*, 46 B. T. A. 1219. The approval

of petitioner's contention would thus, in our view, constitute the adoption of a principle which is in conflict with the correct and long established interpretation of the loss provisions of the code and would lead to confusion in their administration.

We accordingly hold that no part of the purchase price of Rosedale Plantation is deductible by petitioner as a loss sustained in 1942.

*Decision will be entered under Rule 50.*