FLORENCE C. AND PAUL E. PERKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Perkins v. Commissioner
Docket No. 10723-93
United States Tax Court
T.C. Memo 1995-189; 1995 Tax Ct. Memo LEXIS 190; 69 T.C.M. (CCH) 2496; April 26, 1995, Filed *190 Decision will be entered under Rule 155. Florence C. and Paul E. Perkins, pro sese. For respondent: Robert Touchton
GOLDBERG
GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1] Respondent determined deficiencies in petitioners' 1990 and 1991 Federal income taxes in the respective amounts of $ 2,651 and $ 3,815. Following concessions by both parties, [2] the issues for decision are: (1) Whether petitioners are entitled to deduct Schedule C expenses in 1990 and 1991 in excess of the amounts allowed by respondent; and (2) whether certain expenses deducted by petitioners in 1990 and 1991 should instead be capitalized and added to the basis of petitioners' properties. The remaining adjustment in the notice of deficiency to petitioners' self-employment *191 tax liability is computational, and will be resolved by our decision on the aforementioned issues. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated by this reference. Petitioners resided in Columbus, Ohio, at the time their petition was filed. References to petitioner in the singular are to Florence C. Perkins. FINDINGS OF FACT General Background
During 1990 and 1991, petitioner owned Perkins Construction Company (PCC), a sole proprietorship she established many years earlier. Through *192 PCC, petitioner did assorted home improvement projects for local residents, such as installing doors and locks, repairing walls, and, on one occasion, replacing a roof. Because business was slow, petitioner supplemented her income by selling meals from a street cart and betting at the track. Petitioner spent most of her time, however, constructing or renovating three properties: 364 North Garfield Avenue, 415 North Garfield Avenue, and 444-446 North Garfield Avenue. Although petitioner operated under PCC, at no time during 1990 or 1991 did petitioner have a license to perform contracting work, a business listing in the telephone book, or a separate business checking account. During the years at issue, petitioner's husband, Paul E. Perkins (Mr. Perkins), worked full time as a clerk for the U.S. Postal Service. In 1969, petitioner and her sister, Maria Lopez (Ms. Lopez), formed "Perkins Company and Associates" (PCA), a limited partnership. PCA consisted of one general partner, petitioner, and five limited partners, including Ms. Lopez and her daughter, petitioner's two sons, Louis Perkins (Louis) and Paul Carrea, and an individual known only as "Rugby". Prior to the formation *193 of the partnership, Rugby loaned petitioner approximately $ 5,000. In an attempt to repay the loan, petitioner made Rugby a limited partner in PCA. The only names on the documents filed with the State of Ohio, officially declaring the formation of PCA, are Ms. Lopez, petitioner, and petitioner's husband, Mr. Perkins. None of the partners in PCA were required to contribute money to the partnership, and there was no formal decision by the partners regarding what type of business PCA would be engaged in or how the profits and losses would be allocated. Using her own tax identification number, petitioner opened a business checking account under the name of PCA. In 1971, Ms. Lopez suffered a severe stroke and was in a coma for 6 months. Thereafter, Ms. Lopez received $ 85 a month from Social Security and depended on her relatives for her care and assistance. In 1990 and 1991, Ms. Lopez lived in Cleveland, Ohio, with her daughter and petitioner's brother. The Properties
In 1979, an undeveloped lot located at 415 North Garfield Avenue (415 North Garfield) was purchased and titled in Ms. Lopez's name. On July 11, 1985, petitioner and Ms. Lopez entered into a contract, whereby *194 petitioner would construct a home on the lot for $ 35,800. Prior to completion of the house, petitioner and Mr. Perkins began residing in the premises. Mr. Perkins and Ms. Lopez then executed a 30-year lease for the property, whereby Mr. Perkins was to pay Ms. Lopez rent of $ 30 per month. All construction costs and property taxes were paid for by petitioner and Mr. Perkins. At no time did Ms. Lopez live in the house at 415 North Garfield, nor did petitioner receive payment for its construction. In 1987, a two-story house at 364 North Garfield Avenue (364 North Garfield) was purchased and titled in the name of PCA. The house was badly deteriorated and had been boarded up for the past 12 years. Petitioner renovated the house and eventually converted the space into offices, storage areas, and showrooms. In April 1991, petitioner advertised the grand opening of the building, which she called "Plaza King Service Center", by distributing flyers to local residents and merchants. Petitioner also used the location as an office for PCC and allowed an individual to set up a secretarial service in the building rent-free in exchange for answering calls and taking messages for PCC. On *195 February 28, 1990, Mr. Perkins and petitioner's son, Louis, purchased a duplex at 444-446 North Garfield Avenue (444-446 North Garfield), each contributing $ 1,500 for the down payment. The purchase price was $ 15,000 and the building needed extensive renovation. At the time, 444-446 North Garfield housed 9 tenants. In April 1990, there was a fire in the building which was extinguished by the residents. Shortly thereafter, Louis deeded his interest in 444-446 North Garfield to Mr. Perkins. Due to the damage caused by the fire and extensive problems with the wiring and plumbing, the building was declared uninhabitable by the city of Columbus. On April 31, 1990, Mr. Perkins contracted with his wife, petitioner, to renovate the property at 444-446 North Garfield for $ 35,000. Because petitioner had no money at the time, she borrowed the money for the cost of repairs and renovation from Mr. Perkins. Despite the dilapidated state of the building, petitioners received some rental income in 1990 and 1991. To assist her with her renovation projects, petitioner often hired part-time laborers. During the years at issue, petitioner submitted Forms 1099 to the Internal Revenue Service *196 to report wages paid. The payees and amounts are as follows: 1990 1991
Thurmond White
$ 1,255
$ 3,012.50
George Wright
1,214
699   John Q. Dunlap
--  871   Jessie Parker
--  1,387.60
Rescue Rooter
--  855   Petitioner also frequently allowed neighborhood children to perform small tasks in exchange for pocket money. The amounts paid to such workers were not reported on Forms 1099. Again, as the result of petitioner's lack of funds, the money paid to part-time laborers was borrowed from Mr. Perkins. Petitioners reported the following income and expenses on the Schedules C attached to their 1990 and 1991 Federal income tax returns: 1990
1991
Income
Gross receipts
[1] $ 3,108 [2] $ 5,500
Less: Cost of goods sold
6,034 0
Gross income
(2,926)
5,500
Expenses
Supplies
223 4,764
Office expense
0 640
Car/truck expense
5,462 4,971
Insurance
173 230
Taxes
60 1,365
Utilities
1,688 1,029
Subcontractors/wages
8,562 6,826
Spot labor
0 4,009
Travel
1,430 178
Meals
1,200 0
Miscellaneous expenses
0 1,209
Petty cash
0 1,000
Tax preparation
40
Total
$ 18,798 $ 26,261
*197 Respondent disallowed petitioners' Schedule C expenses in excess of $ 110 for 1990, representing the cost of meals sold by petitioner, and in excess of $ 20 for 1991, representing one half of the tax preparation fee claimed by petitioners. Respondent also determined that petitioners' cost of goods sold in 1990 represents capital improvements and should be added to the basis of petitioners' properties. Furthermore, respondent determined that petitioners are liable for self-employment tax in 1991 of $ 350, and are entitled to a corresponding deduction of $ 175. In response, petitioners contend that they are entitled to the full amount of their Schedule C expenses because petitioner is engaged in the business of general contracting, and all of the deductions claimed are attributable to her contracting business. OPINION We begin with the admonition that the determinations of respondent are presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a). All taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. Sec. 6001; Menequzzo v. Commissioner, 43 T.C. 824, 831-832 (1965). *198 Moreover, deductions are strictly a matter of legislative grace, and a taxpayer has the burden of establishing that he or she is entitled to any deduction claimed on a return. Deputy v. du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). As a general rule, if the record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to adequately substantiate the amount of the deduction to which he or she is otherwise entitled, the Court may estimate the amount of such expense and allow the deduction to that extent. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, in order for the Court to estimate the amount of an expense, we must have some basis upon which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985). Without such basis, any allowance would amount to unguided largesse. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Section 162(a) allows as a deduction "all the ordinary *199 and necessary [business] expenses paid or incurred during the taxable year in carrying on any trade or business". Section 262, on the other hand, denies a deduction for personal, living, or family expenses. Section 263(a) denies a deduction for any amount paid for permanent improvements or restoration of property, including the cost of acquiring or constructing buildings, machinery and equipment, furniture and fixtures, and similar properties that have a useful life or that increase the value of such properties substantially beyond 1 year. Sec. 263(a); sec. 1.263(a)-1 and -2, Income Tax Regs. Such payments are capital expenditures and must be added to the basis of the property. Sec. 1016. However, if the property is used in a trade or business, or held for the production of income, then a taxpayer may depreciate the property pursuant to section 167. Otherwise, the capital expenditures are recovered upon the sale of the property. Although the record in this case is confusing and vague, based on the discernible facts, we find that during the taxable years at issue, petitioner was engaged in the business of general contracting. However, with regard to 364 North Garfield and *200 444-446 North Garfield, we find that petitioners held these two properties for the production of income. According to petitioner's testimony, all of the expenses claimed on petitioners' Schedules C, with limited exceptions, [3] are attributable to the three properties. Petitioner argues that all of the work was done pursuant to contracts between the owners of the properties and PCC. Respondent conceded at trial that petitioners substantiated the following expenses for 364 North Garfield: [4]
1990
1991
Building materials
$ 2,918.55
$ 109.35
Utilities (electric)
492.79
755.75
Utilities (water/sewer)
46.11
141.62
Labor
2,795.50
566.00
Miscellaneous
60.37
--  Insurance on property
65.57
--  Property taxes
--  248.63
Office supplies/equipment
--  639.67
Total
$ 6,378.89
$ 2,461.02
*201 Respondent contends, however, that petitioners are not entitled to the deductions because the expenses were not ordinary and necessary to petitioner's trade or business or, alternatively, the expenses are capital expenditures that must be added to the basis and depreciated over the life of 364 North Garfield once the property is placed in service. Petitioner testified that 364 North Garfield was purchased by PCA and that her contracting business, PCC, was hired to renovate and remodel the building. While PCA is registered as a limited partnership with the State of Ohio and does, in fact, hold legal title to 364 North Garfield, the evidence in this case indicates that *202 PCA is nothing but petitioner's alter ego. The partners of PCA have not drafted any type of partnership agreement defining the purpose or structure of the partnership, no arrangements have been made for allocating profits and losses, PCA has no other business purpose outside of its purported ownership of 364 North Garfield, and PCA's checking account was established by petitioner using her personal tax identification number. Also, the partners of PCA made no contributions to the partnership, one partner called Rugby, appears to be some sort of lender about whom the record discloses almost nothing, and another partner was recovering from a coma at the time the partnership was formed. Although petitioners argue that PCA owned 364 North Garfield, petitioners paid the property taxes, utilities, and all of the expenses associated with the property. Thus, we conclude that PCA was formed to allow petitioner to fill the dual roles of owner and contractor. Petitioners are the equitable owners of 364 North Garfield and purchased the property with the intent to renovate and rent out the space or sell at a profit. Because petitioners were unable to find tenants, petitioner used 364 North *203 Garfield as an office for PCC and stored her contracting materials and tools in the spare rooms. Based on the evidence, we find that the expenses for office supplies and equipment in 1991 were ordinary and necessary to PCC and are deductible as Schedule C expenses. The remainder of the expenses in 1990 and 1991 is attributable to the renovation of 364 North Garfield and must be capitalized. See, e.g., sec. 263A; Von Lusk v. Commissioner, 104 T.C. 207 (1995) (capitalized property taxes); sec. 1.263A-1(e)(2)(i), (3)(ii)(L), (M) and (N), Income Tax Regs. Because we accept that petitioners held 364 North Garfield for the production of income, we find that the adjusted basis of that building is subject to depreciation. Sec. 167. Respondent conceded at trial that petitioners substantiated the following expenses for 415 North Garfield: 1990
1991
Building materials
$   382.69
$  69.49
Labor
232.33
200.00
Phone
719.88
--  Miscellaneous
153.37
--  Insurance on property
62.84
--  Property taxes
--  519.03
Total
$ 1,551.11
$ 788.52
Respondent contends, however, that the expenses are personal living expenses or, in the alternative, *204 are capital expenditures that must be added to the property's basis and recovered upon the sale of the property. Petitioner argues that the expenditures were made pursuant to a contract between Ms. Lopez and herself, and are deductible as ordinary and necessary business expenses. Although Ms. Lopez holds legal title to the property, the evidence clearly indicates that petitioners maintain all the benefits and burdens of ownership. Petitioners built the home, paid all of the construction expenses associated with the property, paid the property taxes, and used the home as their personal residence. We disregard the construction contract between petitioner and Ms. Lopez because (1) at the time the contract was entered into, Ms. Lopez's legal capacity to enter into a binding legal agreement was limited, and (2) we find it difficult to believe that petitioner reasonably expected to be paid for her construction services when her sister's income consisted of a Social Security check in the amount of $ 85 each month. Furthermore, we disregard the lease between Mr. Perkins and Ms. Lopez because the term is excessively long and the rent is de minimis. Based on the record, we find the expenses *205 associated with 415 North Garfield are personal living expenses and are not deductible as ordinary and necessary expenses of a business. Under section 164(a)(1), property taxes may be deducted as an itemied deduction; however, because petitioners did not itemize their deductions in 1990 or 1991, they are unable to deduct this expense. With regard to 444-446 North Garfield, respondent determined that the property was rental property and that petitioners are entitled to deduct expenditures totaling $ 5,861 as Schedule E rental expenses in 1990. However, petitioners presented evidence at trial substantiating the following expenditures for the property: 1990
1991
Building materials
$ 1,302.41
$  3,253.14
Labor
3,899.34
7,972.29
Utilities (electric/gas)
529.81
--  Property taxes
--  332.88
Total
$ 5,731.56
$ 11,558.31
Respondent further determined in the notice of deficiency that petitioners received rental income of $ 2,110 in 1990. At trial, however, petitioners testified that they received rental income in 1990 and 1991 in the respective amounts of $ 1,830 and $ 155. Although counsel for respondent was aware of the income received in 1991 at trial, *206 he declined to move for an increased deficiency. As such, we find that petitioners received rental income in the amounts of $ 1,830 in 1990, and $ 155 in 1991. The record contains no evidence upon which we may calculate whether the expenditures for building materials and labor attributable to 444-446 North Garfield and presented at trial include the items previously allowed by respondent ($ 4,265 for repairs in footnote 2) or, instead, represent additional allowable expenses. Petitioners bear the burden of proof on this matter. Rule 142(a). As such, for 1990, we find that petitioners are not entitled to deduct building material and labor expenses in excess of the amount allowed by respondent for repairs. Because respondent determined that petitioners are entitled to current rental expense deductions with regard to 444-446 North Garfield in 1990, and because petitioners verified utility expenses for this property during 1990 at trial, we find that petitioners are entitled to a deduction for utilities in 1990 in the amount of $ 529.81. For 1991, we find that the expenditures for building materials and labor are solely attributable to the complete reconstruction and renovation *207 of 444-446 North Garfield, and not occasional repairs. We therefore find that petitioners must capitalize those expenditures. Secs. 1016, 263A. Likewise, petitioners must capitalize the property taxes paid in 1991 during the reconstruction. See Von Lusk v. Commissioner, supra.
With regard to petitioners' remaining deductions for car and truck expenses, travel, meals, miscellaneous expenses, and petty cash, we find that petitioners have failed to substantiate these deductions or, in the alternative, have failed to show that the expenses were ordinary and necessary to petitioner's contracting business. As such, they have not carried their burden of proof and are not entitled to these deductions. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners concede that gambling profits and rental income erroneously reported on Schedule C should be reported as other income and Schedule E income, respectively. Respondent concedes that petitioners are entitled to additional cost of goods sold of $ 3,000 in 1990 for roofing materials, and Schedule E rental expenses for 1990 in the amounts of $ 365 for car and utilities, $ 1,024 for interest, $ 4,265 for repairs, and $ 207 for depreciation.↩
1. Petitioners' income in 1990 consisted of rental income of $ 2,110, gambling profits of $ 30, earnings from selling hot dogs from a street cart of $ 330, and $ 638 for home repairs from neighbors.↩
2. Petitioners' income in 1991 consisted of $ 3,500 for roofing work and $ 2,000 for a home renovation contract.↩
3. These limited exceptions include: $ 340 deducted in 1990 for "grass cutting" at "Holt Avenue"; $ 3,532.44 deducted in 1991 for roofing materials at "2825 Procter Street", $ 3,000 of which was allowed by respondent as cost of goods sold; and $ 400 deducted in 1991 for labor at "1409 Summit Avenue".↩
4. At trial, petitioners submitted receipts and summaries of these receipts for each of the properties. These receipts do not correlate with the deductions claimed on the Schedules C, and petitioners offered no explanation in order to reconcile the differences. As such, we address only those expenses for which substantiation was presented at trial.↩