DOMESTIC MANAGEMENT BUREAU, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 77693, 87586.  Promulgated September 28, 1938.

*Albert S. Lisenby, Esq.*, for the petitioner.
*Eugene G. Smith, Esq.*, for the respondent.

**OPINION.**

STERNHAGEN: 1. The petitioner on its return deducted as a loss the $17,915.28 charged off on its furniture and fixtures account. The Commissioner disallowed the deduction:

\* \* \* for the reason that it is considered that the payment made therefor to the National Cash Credit Association was in the nature of a payment for good will and not for tangible assets.

It appears from the evidence that, when petitioner paid the National Cash Credit Association an amount equal to its book value of furniture and fixtures, it was not merely buying furniture and fixtures, even at an exorbitant price, but was paying also for a promise of management contracts and to repress complaint or litigation by dissatisfied shareholders. How much is even approximately allocable to furniture and fixtures is impossible to say. Groves' statement that

petitioner used "about a third" of the furniture in its Philadelphia office and abandoned the rest affords no basis for apportioning the $18,996.27 paid. The only identifiable item is the $1,525.82 which was accounted for as the cost of a check writer which was charged off. How the $17,915.28 was computed is not clear, but it can not be brought to check with the $18,996.27.

It is not impossible or in the least unreasonable to believe from the evidence, as the Commissioner has held, that $17,915.28 was paid for an intangible asset, call it good will or an assurance of future contracts or "to avoid trouble" or what not. Such a payment is not deductibe either as a loss or as an expense. (*Public Opinion Publishing Co.* v. *Jensen*, 76 Fed. (2d) 494; *First National Bank of Omaha* v. *Commissioner*, 49 Fed. (2d) 70; *Clark Thread Co.* v. *Commissioner*, 100 Fed. (2d) 257). Nor is it the subject of exhaustion, since there is no evidence of a determinable life of the investment. *Norwich Pharmacal Co.*, 30 B. T. A. 326. There is also no evidence to support the idea that there was any subject of obsolescence or any process of obsolescence of whatever the subject matter may be thought to be. Therefore, except for the unidentified lot of abandoned furniture, which was useless and apparently valueless when acquired, petitioner still has all that it paid for and has lost nothing. To establish a loss it should have proven the destruction, abandonment, or utter worthlessness of specific property which had been acquired at an identified cost and not merely the abandonment of some property which had been acquired as a minor incident in a composite transaction. *Saline Motor Co.*, 22 B. T. A. 874; *Columbus Brick & Tile Co.*, 26 B. T. A. 794.

There is some analogy to the purchase of land with an old house upon it which is to be removed to make way for a new structure. The destruction or abandonment of the old building has been held to be no ground for a deduction. *Liberty Baking Co.* v. *Heiner*, 37 Fed. (2d) 703; *Lansburgh & Brother, Inc.*, 23 B. T. A. 66; *Robert B. Griffin*, 17 B. T. A. 255.

The Commissioner's disallowance of the deduction of $17,915.28 is sustained, as is his denial of any deduction for depreciation in excess of $495.78, being 10 percent of the balance of $4,957.81 in the furniture and fixtures account.

2. The Commissioner disallowed the deduction both of the $25,000 paid to Wallace Groves and of the $2,600 paid for printing, saying "The cost of preparing the manual and printing of same is held to be a capital expenditure." The evidence can not be said to establish any error in this determination. By extended testimony of George and Wallace Groves, an attempt was made to show that the amount was to a substantial extent, say two-thirds, paid as compensation for

the services of Wallace Groves, and hence deductible as ordinary and necessary expenses of carrying on the business, and, failing that, to show that the manual was of a useful life of not more than two and a half years and that its cost was the subject of deductible exhaustion on that basis. But it is hard to get a foothold in this highly rationalized testimony and these "very complex" corporate operations upon which one can stand to make an assured finding of fact at variance with the Commissioner's determination. That Wallace Groves, out of his active experience in the small loan business, devised the manual of instructions is shown. Apparently he also gave some further attention to the petitioner's business which might be called services, although what they were and when performed the witnesses found it hard to say. After carefully hearing and considering the evidence, we have found that the entire amount of $25,000 was paid to Wallace Groves as the cost of the manual. The manual was a capital asset and its cost is therefore not properly deductible. The $2,600 paid for its printing was part of its cost and is therefore likewise not deductible.

The respondent now concedes that the cost of the manual may be amortized and that 1/56 of its cost is deductible as exhaustion in the fiscal year 1932. Petitioner, however, is not content with exhaustion measured by the life of the copyright, but claims that the period of exhaustion shall be taken as 2½ years. George Groves testified that changing business conditions required frequent changes in the manual; "it was continually changing from the day it came off the press"; and that he was sure when the manual was first completed that changes would result in "an entirely new manual" in 2½ years. This testimony does not establish that the copyrighted manual in which the original investment was made was in process of exhaustion. Taylor v. Commissioner, 51 Fed. (2d) 915; certiorari denied, 284 U. S. 689. It does not appear whether the cost of the new and substituted pages has been deducted in the later years when paid; but the depreciable life of a depreciable asset is not ordinarily treated as lessened by the substitution of new and improved parts for old.

The respondent's concession of a deduction of 1/56 of $27,600, or $494.62, during the fiscal year 1932 is as much as petitioner may have.

3. The Commissioner disallowed a deduction of $7,500 claimed as ordinary and necessary expense. The petition and the evidence on the issue are jumbled and vague beyond hope of analysis and findings. The accounts indicate a payment of $3,750 to Merchants & Manufacturers Securities Co., controlled by George Groves, and another of "legal fees" without identification. George Groves testified that $3,500 [$3,750] was paid by him to Arthur Green, presi-

dent of the Merchants & Manufacturers Securities Co. "for cancellation of a certain contract" which has since been lost—a contract to manage the Domestic Finance Co.'s loan offices. Three thousand seven hundred and fifty dollars was paid by George Groves to Arthur Green to pay to "a hostile lawyer who threatened to cancel these contracts by litigation and he wanted a certain sum of money to step out of the picture. Mr. Green finally got him down to accept $3,750 if he wouldn't take any action."

The petitioner does not now press the issue, and the Commissioner's disallowance of the deduction of $7,500 is sustained.

4. The Commissioner disallowed a deduction of $12,000 alleged by petitioner to have been loaned to the Pennsylvania Industrial Banking Corporation and $2,000 alleged to have been loaned to the Growart Corporation and ascertained in the fiscal year 1932 to be worthless debts. The substantive evidence to support the deductions is all in the testimony of George Groves. The petitioner's books account for the alleged items in a manner substantially different from an accounting for loans. Of the $12,000 said to have been advanced to the Pennsylvania Industrial Banking Corporation, it appears from the books that a $5,000 check drawn to George Groves was immediately charged off as "legal fees" and a $2,000 check to one Orth, who was in some way related to the Pennsylvania Co., was immediately charged to miscellaneous expense. There is no item on the books to give the least indication of a receivable as to either of these items or as to any amount from the Pennsylvania Co.

No attempt was made to explain these entries in reconciliation with the alleged loans. The story George Groves told on the witness stand is that the Pennsylvania Co. was organized by the former Superintendent of Banking of Pennsylvania and several others[1] to bring together numerous savings and small loan businesses in the commonwealth, and he said he would "advance" $12,000 to help finance the project, with the understanding that if it succeeded the petitioner would get a contract to manage the resulting small loan business. He says he advanced $10,000 in August, and, as has been said, there is an entry of $5,000 on the petitioner's books as a check to him for legal fees. The other $5,000 does not appear on the books in any form. Because of the depression, the venture failed in the year it was started, and with it the prospect of any management contract. This, says Groves, was known to him in November 1931. In December $2,000 was given to Orth because Groves had promised $12,000 and the additional amount had been spent in promoting the project. The Pennsylvania Co. was left entirely without assets and the amount of $12,000 was irredeemably lost.

[1] Testifying to justify his salary in another issue, George Groves said he was general manager of the Pennsylvania Industrial Banking Corporation.

This oral testimony is all there is. There is no corroboration and it must be decided whether the witness is to be entirely believed. As to this, we are by no means free from doubt. The petitioner's accounts do not support the testimony, and yet the accounting labels used throughout the bookkeeping seem to mean but little in any event. Whether the witness' oral statement is any more reliable is hard to say; and without it there is no more in this record upon which to base findings than the Commissioner says there was before him. In our opinion, the evidence is too flimsy to be a foundation for the necessary findings of fact. This Board is no more bound than is a jury to believe the statements of the most interested witness, even though there be no direct or affirmative evidence to the contrary. The Board is unable to conclude that there is any basis for the deduction claimed of $12,000 alleged to have been paid to the Pennsylvania Industrial Banking Corporation or the $2,000 alleged to have been paid under similar conditions to the Growart Corporation, and the Commissioner's determination as to these items is sustained.

5. The Commissioner disallowed deductions of the $5,000 and $3,565 paid for lawyers' services in the taxable year 1932. The disallowance was for lack of evidence submitted to the Commissioner to support them. It is now proved that the amounts were in fact paid for services which were described adequately to support the findings that they were ordinary, and the conclusion that the payments were ordinary and necessary expenses of the taxable year. The amounts are deductible, and the Commissioner's determination as to them is reversed.

6. The petitioner on its 1932 return deducted $60,000 as salary paid to George Groves, its president. The Commissioner determined $30,000 as a reasonable salary and disallowed the deduction of the excess of $30,000. The petitioner now admits that no salary was actually paid to Groves for January and February 1932, and that to the extent of $10,000 the deduction was excessive. It contests the disallowance of any part of the $50,000 actually paid. The only question is as to its reasonableness.

The evidence describes the services and also the services and compensation of comparable positions in similar businesses, and in our opinion adequately supports the finding that the salary was reasonable compensation for the services performed. It is, therefore, properly deductible, and the Commissioner's determination is reversed in so far as it disallows $20,000 of the deduction taken, and sustained as to the disallowance of $10,000.

Docket No. 87586 covers the fiscal year 1933. The petition raises four issues. As to the first issue, which contests a disallowance of a deduction of $9,567.45 bad debts or losses, there is no evidence, and

it must be regarded as abandoned. The Commissioner's determination is sustained. As to the second issue, which claims a deduction for salary to George Groves, its president, there is no evidence to support the claim, and the Commissioner's determination is sustained. The third issue is a corollary of the claim above considered for a deduction of $17,915.28 in the fiscal year 1932 in respect of furniture bought and abandoned. The Commissioner made no adjustment of the item for 1933, and there is nothing in the record upon which a conclusion can be based that an adjustment is required. The fourth item is likewise a corollary for 1933 of the issue above considered, as to a deduction for amortization of the cost of the manual. The respondent's concession that the cost of $27,600 is amortizable over the life of the copyright will result in a proportionate annual deduction.

*Judgment will be entered under Rule 50.*