T.C. Memo. 2013-231

UNITED STATES TAX COURT

FRONTIER CUSTOM BUILDERS, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2678-10.                    Filed September 30, 2013.

<u>Juan F. Vasquez, Jr.</u>, <u>Jaime Vasquez</u>, and <u>Mel E. Myers</u>, for petitioner.

<u>William G. Bissell</u> and <u>Betina Nadler</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined a $653,272 deficiency in the

corporate income tax of petitioner, Frontier Custom Builders, Inc. (Frontier), for

its 2005 taxable year.  After concessions,[1] the issues for decision are:

---

[1]The parties stipulated and agreed that of the total $362,240 rent expense
Frontier deducted on its 2005 tax return, Frontier may neither deduct nor capitalize
(continued...)

**[*2]**   (1)  whether Frontier, a custom homebuilder, is required to capitalize rather than deduct all direct and certain indirect costs of production.  We hold that it is;

(2)  whether Frontier can change its accounting method without having previously secured respondent's consent. We hold that it cannot and therefore we must decide whether respondent's determination that petitioner must change from an improper to proper accounting method is unlawful. We hold that it is not;

(3)  whether Frontier must capitalize a portion of the cost of its officer's compensation.  We hold that it must;

(4)  whether Frontier must capitalize a portion of the cost of its nonofficer employees' compensation.  We hold that it must;

(5)  whether Frontier must capitalize a portion of its other expenses incurred.  We hold that it must; and

---

[1](...continued)
$73,601 but may deduct $288,639.  The parties also agreed the following expenses are fully deductible:  salaries and bonuses for sales and marketing employees; State franchise tax; corporate income tax; employment tax; depreciation; legal fees for warranty claims; office telephone for the Fairfield and Oakhurst offices; warranty; Web page maintenance; decorating models; bank charges; dues and subscriptions; meals; charitable contributions; and advertising.

**[*3]** (6) whether Frontier qualifies for adjustments for other tax years through the mitigation provisions. We hold that Frontier's request for relief under the mitigation provisions is premature until the decision in this case becomes final.

## FINDINGS OF FACT

Some of the facts have been stipulated for trial under Rule 91.[2] The stipulation of facts and the attached exhibits are incorporated by this reference and are found accordingly.

At the time the petition was filed, Frontier, a Texas corporation, maintained its principal place of business in Houston, Texas. Frontier timely filed its Form 1120, U.S. Corporation Income Tax Return, for 2005, the tax year at issue. Respondent timely issued a notice of deficiency. In the notice, respondent made adjustments to Frontier's income totaling $1,888,625 under the uniform capitalization (UNICAP) rules of section 263A. The total $1,888,625 adjustment comprises a $1,722,676 section 481(a) adjustment and a $165,949 section 263A adjustment and resulted in a $653,272 corporate income tax deficiency. Frontier timely filed a petition with this Court for redetermination of the deficiency.

_____

[2]Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year at issue.

**[*4]** I.  Frontier

Frontier was founded in 1990 and incorporated in 1992.  Since 1994 Frontier has been a builder of custom and speculative homes.

On its 2005 tax return Frontier capitalized direct material and labor costs and post-production-period carrying costs but claimed deductions for salaries, yearend bonuses, and other miscellaneous expenses.

Frontier used the same accounting method for tax that it used for financial (book) accounting.  Frontier did not submit Form 3115, Application for Change in Accounting Method, to respondent requesting permission, nor has it received permission, to change its accounting method for 2005.  Frontier maintained no contemporaneous time records showing how many hours Frontier employees spent on their various activities on the company's behalf.

II.  Ronald W. Bopp

At all relevant times Mr. Bopp was president and CEO of Frontier.  He founded Frontier after working for many years--during high school and college--in the construction industry as a framer, roofer, and carpenter and later acquiring management experience at Kroger.

As president Mr. Bopp worked long hours and performed a variety of jobs at Frontier.  He worked 55-70 hours per week, rarely took a vacation, and was

[*5] never away for more than three days. His duties involved managing all of the company's departments, monitoring and preparing its financial statements, writing company policy manuals, determining its hiring needs and recruitment, and overseeing its legal affairs. In 2005 Frontier paid Mr. Bopp a regular salary and a yearend bonus. Frontier did not produce contemporaneous time records showing how many hours Mr. Bopp spent on each of his various activities.

Mr. Bopp was well connected with the operations of his company and had several reports and tools that he used to track the progress of homes. He conducted weekly meetings with the project managers as an opportunity to learn what stage of completion the homes were in and to discuss critical situations. He would occasionally stop by worksites for other meetings and to solve problems the project managers could not resolve. He received monthly reports and productivity schedules detailing when a job was going to close and whether the project managers were running 100% productivity on their homes. Mr. Bopp was the direct boss of the project managers. He had a very good understanding of the progress of each homebuilding project and participated in the preparation of the homes' progress reports.

[*6]  Mr. Bopp determined which developers Frontier would work with, he reviewed and approved Frontier's subcontractors, and he conducted reviews to make sure the project managers researched the suppliers and vendors.

III.  Other Employees

A.  Project Managers

The duties of a project manager included managing construction, being the primary contact for customers, performing warranty work, and ensuring that the homes were built per design and in conformity with building standards.

In 2005 Frontier paid its project managers regular salaries, bonuses for warranty work, and yearend bonuses.  Mr. Bopp delegated the warranty work to his project managers.  Project managers worked closely with the designers and decorators throughout the homebuilding process. The project managers did not personally purchase building materials, nor did they hammer any nail or lay any wood.

Mr. Bopp hired David Connery, a supervisor, to directly oversee the work of the project managers.  Despite Mr. Connery's serving as the project managers' supervisor, Mr. Bopp would still step in to address specific situations with the project managers.  Mr. Connery left Frontier at the end of July 2005, and Mr. Bopp continued to oversee the duties of the project managers.

**[*7]** B. <u>Designers and Decorators</u>

The designers met with clients, identified what they wanted in a house, and designed the house using the company's AutoCAD software. They also designed the electrical wiring, plumbing, staircases, elevations, structural plan, doors, windows, glass blocks, floors, and driveways. Frontier paid the designers regular salaries, profit-sharing bonuses, and warranty bonuses. The design services were provided outside of the homebuilding contracts, and a client using these services could walk away from Frontier and use that design with another builder.

The decorators worked with clients to create and sell upgraded home products such as: exteriors, roofing, appliances, wallpaper, countertops, shower doors/glass trim, wrought iron spindles, paint colors, tile, wood floors, carpets, counters, plumbing and light fixtures, moldings, hardware, stains, window treatments, shutters, backsplashes, doors, and other accessories. Frontier paid the decorators regular salaries and warranty bonuses.

C. <u>Elisa Wolfe</u>

Elisa Wolfe worked as an administrative assistant to Mr. Bopp. She did day-to-day entries on home and inventory schedules and assisted Mr. Bopp with talking to lenders and handling warranty issues. Frontier paid Ms. Wolfe a regular salary and a yearend bonus.

**[*8]**   D.  <u>Charlotte Guarino</u>

Charlotte Guarino was an accountant for Frontier who worked on accounts receivable, client billings, payroll, accounts payable invoices for payments to contractors, and some tax preparation.  Frontier paid Ms. Guarino a regular salary and a yearend bonus.

E.  <u>Sandra Alvarado</u>

Sandra Alvarado was a tech writer on staff that took the policy manuals Mr. Bopp wrote and converted them into Web-based PDFs.  These documents pertained to personnel policy, employee handbooks, and benefits packages.  Frontier paid professional fees to Ms. Alvarado for her services in 2005.

F.  <u>Jason Belden</u>

Jason Belden was Frontier's information technology specialist.  He modified and improved the programming for the company Web site.  Frontier paid Mr. Belden a regular salary and a bonus.

IV.  <u>Carrying Costs</u>

In 2005 Frontier capitalized post-production-period carrying costs, which were incurred to keep homes in a marketable condition until they could be sold. Frontier did not submit Form 3115 to respondent to request permission, nor has Frontier received permission, to change its accounting method for the homeowner

[*9] association dues, property taxes, other taxes, utilities, and insurance capitalized in 2005.

V.  Other Expenses

A.  Taxes

In 2005 Frontier deducted employees' payroll tax expenses and owner's payroll tax expenses.

B.  Employee Benefit Program

Frontier deducted employee benefit program costs in 2005.  The employee benefit program is representative of the health insurance provided to the employees during the 2005 year.

C.  Insurance

In 2005 Frontier deducted costs for builder's risk insurance, general liability insurance, and vehicle insurance.  The builder's risk insurance cost is for a policy specifically related to each job in production or under construction.  It covers each individual job for things like fire, vandalism, and theft.  The general insurance cost represents an umbrella policy that covers the whole company.  It covers things like slip-and-fall cases in the model homes, copyright infringement claims, and advertising infringement claims.  The vehicle insurance covered the vehicle that Mr. Bopp drove to work.

**[*10]** D. <u>Vehicle Expenses</u>

Frontier deducted vehicle expenses for a company vehicle that Mr. Bopp drove in 2005. He drove his company-provided vehicle only for business purposes.

E. <u>Office Expenses</u>

Frontier deducted office expenses relating to the sales offices, main office, and model homes in 2005.

F. <u>Mobile Telephone Expenses</u>

Frontier deducted mobile telephone expenses relating to the sales offices, sales personnel, corporate office, project managers, and decorators in 2005.

G. <u>Office Telephone Expenses</u>

Frontier deducted office telephone expenses relating to the sales offices, main office, and model homes in 2005.

H. <u>Tool Expenses</u>

In 2005 Frontier deducted costs for small tools used for random repairs on the job.

I. <u>Annual Retreat (Training and Seminars)</u>

Frontier deducted costs, including travel costs, for its annual all-employee training seminar in 2005. The all-employee training seminar was an annual, three-day retreat for employees. It was used for teambuilding; discussing what Frontier

[*11] could do better, future opportunities, and ways to improve processes; going over financials; and reviewing invoices in a way to ensure the entire team (i.e., accounting, project managers, and sales staff) understood the process.

J.  Utility Expenses

Frontier deducted utility expenses relating to the sales offices, main office, and model homes in 2005.

K.  Computer Maintenance Expenses

Frontier deducted computer maintenance costs incurred to repair existing computer equipment and keep systems updated in 2005.  All models had computers and all design work on the homes required computer systems.

OPINION

I.  Burden of Proof

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed deductions.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

**[\*12]** Section 7491(a), however, shifts the burden of proof to the Commissioner if the taxpayer produces credible evidence on any factual issue and satisfies the requirements of section 7491(a)(2). The benefits of section 7491(a) are unavailable to a corporation unless the taxpayer can demonstrate that, on the date the Tax Court petition was filed, it met the net worth and employee threshold in section 7491(a)(2)(C). Frontier contends section 7491(a) applies to shift the burden of proof, but the record is not clear on whether Frontier meets the requirements of section 7491(a)(2)(C).

In respect of any new matter, the Commissioner bears the burden of proof. Rule 142(a)(1). As discussed later, on brief respondent changed his calculation of the appropriate method of accounting for Frontier's indirect costs, which we find to be akin to new matter. Shea v. Commissioner, 112 T.C. 183, 190-191 (1999) ("When the Commissioner attempts to rely on a basis that is beyond the scope of the original deficiency determination, the Commissioner must generally assume the burden of proof as to the new matter.").

However, on the record before us, we do not need to reference the burden of proof to resolve this case as the facts are adequately presented.

**[*13]** II.  UNICAP Section 263A

We begin with a brief overview of how the UNICAP rules work under section 263A.  Section 263A requires taxpayers that produce real property to capitalize certain direct and indirect costs of production and recover those costs in a matter appropriate to the situation.  Sec. 1.263A-1(c)(1), (3), (4), Income Tax Regs.

Direct costs that must be capitalized include direct material and direct labor costs.  Sec. 1.263A-1(e)(2), Income Tax Regs.  Indirect costs that must be capitalized are all indirect costs properly allocable to property produced.  Indirect costs are properly allocable to property produced when the costs directly benefit or are incurred by reason of the performance of production activities.  Sec. 1.263A-1(e)(3)(i), Income Tax Regs.  Accordingly, indirect costs must be allocated between production and nonproduction activities.  Sec. 1.263A-1(c)(1), (e)(3), Income Tax Regs.

In addition to production costs, indirect costs include service costs.  Service costs must be allocated among capitalizable, deductible, and mixed service costs.  Sec. 1.263A-1(e)(4)(ii), Income Tax Regs.  If an entire department or function performs only production or only nonproduction service activities, the entire cost of that department or function will be capitalizable or deductible, respectively.

**[*14]** Mixed service costs are those service costs which are partially allocable to production and partially allocable to nonproduction. Sec. 1.263A-1(e)(4)(ii)(C), (h)(6), Income Tax Regs.

   A.  Custom Homebuilder (Frontier)

As a preliminary matter, we must decide whether Frontier, as a custom homebuilder, is subject to the UNICAP rules under section 263A. Frontier contends its business model is centered around sales and marketing, not production-related services. The thrust of its argument is that custom homebuilders differ from speculation homebuilders because their price premiums and profitability come not from cost control, but rather from the creativity of their salespeople, designers, decorators, and marketing employees.

Section 263A requires taxpayers that produce real property to capitalize certain costs. The term "produce" includes "construct, build, install, manufacture, develop, or improve." Sec. 263A(g)(1).

Frontier contends it is outside the scope of section 263A because it does not employ the tradesmen--e.g., carpenters, welders, and plumbers--who actually build the homes. All of those activities are subcontracted out. It therefore claims its actual employees' services, and the related costs incurred, are more reflective of a

[*15] sales and marketing company that manages the creation of a custom product rather than a construction company producing streamlined goods.

Our holding in Von-Lusk v. Commissioner, 104 T.C. 207 (1995), illustrates that activities in addition to physical construction may be included in the production of real property. In Von-Lusk, the question was whether a partnership had to capitalize costs such as performing engineering and feasibility studies and drafting architectural plans. We held that those activities were development activities even though they had no immediate physical impact on the property. Id. at 216. In deciding Von-Lusk, we reviewed the text and legislative history of section 263A and observed that Congress intended the term "produce" to be broadly construed.

Frontier sells custom and speculative homes. Speculative homebuilding is the classic production activity to which section 263A applies. Frontier's argument is that custom homebuilding is different from speculative homebuilding and that this difference keeps its activities out of the reach of section 263A. Before Frontier sells a home, it builds it; before Frontier builds a home, it designs it. After Frontier creates the design for each custom home, it subcontracts out the physical labor to the tradesmen who actually build the home. Frontier's use of subcontractors for the physical home construction is not enough to exempt Frontier from section 263A.

**[\*16]** See, e.g., sec. 1.263A-2(a)(1), Income Tax Regs.  The creative design of custom homes is ancillary to the actual physical work on the land and is as much a part of a development project as digging a foundation or completing a structure's frame.  The construction of a home cannot move forward if the design step is not taken.  Therefore, we reject Frontier's argument and find Frontier is a producer of real property subject to section 263A.

B.  Accounting Method

We turn to the issue of Frontier's accounting method vis-a-vis section 263A. A taxpayer must compute its taxable income under an accounting method that in the Commissioner's opinion clearly reflects income.  See sec. 446.

Frontier used the same accounting method for tax that it used for financial (book) accounting.  In 2005 Frontier capitalized direct material and labor costs and post-production-period carrying costs, but it claimed deductions for salaries, yearend bonuses, and other miscellaneous expenses.  Frontier requests this Court to sustain its original reporting position of deducting all of the above expenses.[3]

---

[3]Frontier asserted an accounting method in its pretrial memorandum different from the one asserted at trial or in its posttrial briefs.  In its pretrial memorandum, Frontier argued that additional sec. 263A costs should be allocated to ending inventory using the standard cost method under sec. 1.263A-1(f)(3)(ii), Income Tax Regs., or one of its close variants, the specific identification method under sec. 1.263A-1(f)(2), Income Tax Regs., the burden rate method under sec.

(continued...)

[*17] The Commissioner has broad discretion to decide whether a taxpayer's accounting method clearly reflects income, and his determination is to be upheld unless it is clearly unlawful. Thor Power Tool Co. v. Commissioner, 439 U.S. 522 (1979). Respondent determined the accounting method Frontier used in 2005 did not comply with section 263A and therefore did not clearly reflect income. Once the Commissioner determines that a taxpayer's method does not clearly reflect income, he may select for the taxpayer a method which, in his opinion, does clearly reflect income. Sec. 446(b). The courts will uphold the Commissioner's determination unless the taxpayer makes a clear showing that the Commissioner abused his discretion. Wilkinson-Beane, Inc. v. Commissioner, 420 F.2d 352 (1st Cir. 1970), aff'g T.C. Memo. 1969-79; Standard Paving Co. v. Commissioner, 190 F.2d 330, 332 (10th Cir. 1951), aff'g 13 T.C. 425 (1949). The taxpayer carries the burden of showing that the method selected by the Commissioner is incorrect; this

---

[3](...continued)
1.263A-1(f)(3)(i), Income Tax Regs., or a permitted modified version thereof. Because Frontier made no argument to that effect at trial or on brief, we deem it waived. See Bernstein v. Commissioner, 22 T.C. 1146, 1152 (1954) (holding against the taxpayer with respect to an issue because, among other things, the taxpayer did not press the issue on brief), aff'd per curiam, 230 F.2d 603 (2d Cir. 1956); Lime Cola Co. v. Commissioner, 22 T.C. 593, 606 (1954) ("Petitioners in their brief do not argue anything about * * * [the issue]; and, although they do not expressly abandon the issue * * *, we presume they no longer press it.").

**[*18]** burden is extremely difficult to carry.  Hamilton Indus., Inc. v. Commissioner, 97 T.C. 120 (1991).

Upon examination, respondent placed Frontier on a method of accounting that respondent determined clearly reflected income.  The chosen method was a combination of the simplified production and simplified service cost methods of accounting.

The simplified production method provides a simplified method for determining the additional section 263A costs properly allocable to property on hand at the end of the taxable year.  Sec. 1.263A-2(b)(1), Income Tax Regs.  The simplified service cost method provides a simplified method for determining capitalizable mixed service costs properly allocable to the taxpayer's production activities.  Sec. 1.263A-1(h)(1), Income Tax Regs.  Both methods can be used for noninventory property held primarily for sale to customers in the ordinary course of business.  Secs. 1.263A-2(b)(2)(i)(B), 1.263A-1(h)(2)(i)(B), Income Tax Regs.  Homes built by homebuilders are noninventory property subject to section 263A. Carpenter v. Commissioner, T.C. Memo. 1994-289.

Section 263A required Frontier to capitalize certain costs.  As discussed below, Frontier did not capitalize those costs.  Therefore, its previous method of accounting was not in compliance with section 263A.  Accordingly, we reject

**[\*19]** Frontier's argument that it should be allowed to maintain its original reporting position of deducting the capitalizable costs under section 263A.

Because Frontier's previous accounting method was not in compliance with section 263A and Frontier has made no showing that respondent abused his discretion in choosing the simplified production and simplified service cost methods of accounting, we uphold respondent's determination.

C. Calculation of Accounting Method

Before trial the parties agreed to a stipulated exhibit showing respondent's calculation of the appropriate method of accounting for Frontier's indirect production costs. See Rule 91. Respondent on brief presented a different calculation. Respondent proposes to change the way he characterizes some of Frontier's expenses (e.g., changing a cost allocation from partly capitalizable, deductible, and mixed-service to entirely mixed service). This posttrial adjustment is akin to presenting a new matter.[4] However, we find this posttrial adjustment permissible for two reasons. First, it does not alter the original deficiency or

---

[4]"A new theory that is presented to sustain a deficiency is treated as a new matter when it either alters the original deficiency or requires the presentation of different evidence. * * *A new theory which merely clarifies or develops the original determination is not a new matter in respect of which * * * [the Internal Revenue Service] bears the burden of proof." Shea v. Commissioner, 112 T.C. 183, 191 (1999).

[*20] require the presentation of different evidence. Respondent's new calculations rely on evidence that was presented at trial. This adjustment merely clarifies or develops respondent's original determination. Second, this adjustment is not prejudicial to Frontier's case-in-chief because Frontier made no idiosyncratic argument based on respondent's stipulated, pretrial calculation. Frontier simply maintained on brief that this Court should sustain Frontier's original reporting position of fully deducting all of its 2005 expenses at issue. Accordingly, respondent is permitted to use his posttrial calculation adjustments.

### D. Officer Compensation (Mr. Bopp)

Frontier fully deducted the compensation of its corporate officer, Mr. Bopp, for 2005, and respondent determined that this compensation expense is subject to section 263A as a mixed-service cost. In 2005 Mr. Bopp was paid a regular annual salary and a yearend profit-sharing bonus. Frontier argues his compensation should be wholly deductible for the year in which paid. We start by addressing his salary, then turn to his bonus.

#### 1. Salary

Frontier argues Mr. Bopp's compensation is a deductible service cost because he was being compensated for his responsibilities relating to overall management, overall company policy, general financial accounting, strategic

**[\*21]** business planning, and "marketing, selling, or advertising". See sec. 1.263A-1(e)(4)(iv), Income Tax Regs.

The cost of overall management of the taxpayer may be deductible provided that no substantial part of the cost of that function benefits a particular production activity. Sec. 1.263A-1(e)(4)(ii)(A), Income Tax Regs. Therefore, if a substantial part of the cost benefits production, then at least a portion of that cost must be capitalized. Respondent does not dispute that Mr. Bopp acted as a CEO of Frontier and was responsible for Frontier's overall management. Respondent argues that a substantial part of Mr. Bopp's services benefited production and therefore a portion of his salary should be capitalized as a mixed-service cost.

Respondent relies on PMT, Inc. v. Commissioner, T.C. Memo. 1996-303, to support his determination to capitalize a portion of Mr. Bopp's salary. In PMT, we were faced with a corporate president, Mr. Penalba, who worked in both production and sales for a company owned jointly by him and his wife. We held 75% of the compensation paid to Mr. Penalba was subject to section 263A.

The facts of PMT are similar to the facts here. PMT, Inc., designed its own fabrics, purchased the raw materials, contracted out the production operations to fabric manufacturers, and sold the fabrics to customers. Mr. Penalba met with customers to discuss fabric designs. He then designed those fabrics according to

[*22] the customer's specifications.  He shared responsibility for ensuring the fabric manufacturing process was cost efficient, so it was also his responsibility to select the efficient and capable factories that were going to produce the fabrics.  Mr. Penalba also supervised and worked directly with his production manager who managed the production of the fabrics.  In addition, Mr. Penalba was responsible for PMT's sales operations, including:  recruiting and training salespeople, serving as sales manager, and supervising sales staff.

Like PMT, Inc., Frontier designs homes, purchases raw materials, contracts out production operations, and sells homes to customers.  Similar to Mr. Penalba, Mr. Bopp would meet with his clients to discuss house designs.  Frontier's designers do the bulk of the design work, but the record also shows Mr. Bopp did some design work on clients' homes during the year at issue.  These designs are done according to the specifications clients make during their initial meeting with Mr. Bopp.  Mr. Bopp also managed the efficiency of the production by monitoring monthly reports and productivity schedules to determine whether the project managers were running 100% productivity on the homes.  Mr. Bopp worked closely with his project manager supervisor, Mr. Connery, and with the project managers directly.  Further, he selected the developers Frontier would work with and reviewed the project managers' choices on vendors and suppliers.

[*23] The PMT case demonstrates that a corporate officer can be heavily involved in sales, as Mr. Penalba was and as Mr. Bopp claims to have been; and yet when some of his other activities directly benefited production, a portion of his compensation will be subject to capitalization under section 263A.

Frontier distinguishes PMT on the sole premise that Mr. Bopp employed a full sales, design, decorating, project management, and marketing staff, which freed him to do other deductible service duties.[5]

However, Frontier stipulated its inability to produce contemporaneous time records to show how many hours Mr. Bopp spent on his various activities on behalf of Frontier. Frontier relies on Mr. Bopp's uncorroborated testimony to show the number of hours he spent on each of his various activities. In Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), we held that the Court is not required to accept a party's self-serving testimony that is uncorroborated by persuasive evidence. Frontier then concludes that after considering the amount of time Mr. Bopp testified to spending on these duties, an inference can be drawn that little time remained to perform production-related activities. Frontier asks the Court to find such an inference in hopes that we find Mr. Bopp spent over 90% of his time

---

[5]Frontier listed various duties Mr. Bopp performed on behalf of Frontier that were most in line with the deductible service activities listed under sec. 1.263A-1(e)(4)(iv), Income Tax Regs.

**[\*24]** on policy- and sales-related functions, thus entitling Frontier to deduct 100%

of Mr. Bopp's salary under the de minimis rule in section 1.263A-1(g)(4)(ii),

Income Tax Regs.[6]

We find Mr. Bopp's testimony regarding the number of hours he spent on

each activity insufficient to show that no substantial portion of his time was spent

on production-related activities.  The record indicates Mr. Bopp engaged in

production-related services; and because Mr. Bopp cannot substantiate the time he

spent on each of his other activities, we find the de minimis rules to be of no use to

Frontier.  See sec. 1.263A-1(g)(4)(ii), Income Tax Regs.  Accordingly, we hold that

Mr. Bopp's salary is partially allocable to production-related services and partially

allocable to non-production-related services.  Therefore, his compensation is

subject to section 263A as a mixed service cost.

---

[6]      (ii) De minimis rule. --For purposes of administrative convenience, if 90 percent or more of a mixed service department's costs are deductible service costs, a taxpayer may elect not to allocate any portion of the service department's costs to property produced or property acquired for resale. * * * Under this election, however, if 90 percent or more of a mixed service department's costs are capitalizable service costs, a taxpayer must allocate 100 percent of the department's costs to the production or resale activity benefitted.

**[\*25]**        2. <u>Bonus</u>

Frontier makes two arguments for deducting Mr. Bopp's yearend bonus. First, according to Frontier, Mr. Bopp received no direct benefit from any of his annual bonuses[7] when they were issued; every year that a bonus was received, Mr. Bopp redeposited the entire bonus, less employment taxes, into the company for additional working capital.  Frontier furthers this argument by pointing out that Mr. Bopp did not live an extravagant lifestyle as he drove a 1994 Ford truck and lived on the company's premises.  Second, Frontier claims the bonus was deductible because it is determined by profits from homes sold and thus cannot be related or capitalized to ending inventory.

Frontier's first argument is wholly erroneous.  Mr. Bopp's taste in living quarters and mode of transportation is in no way relevant to whether Frontier can deduct his bonus distribution.  Section 263A(c), (d), and (h) identify the situations in which section 263A will not apply.  Nowhere do those subsections, nor any other applicable Code or regulation sections, state an exception or exemption from section 263A for compensation paid to persons living a modest lifestyle.

Frontier's second argument raises a method of accounting question.  Frontier attempts to allocate the bonus distribution exclusively to homes sold by yearend

---

[7]This refers to bonuses he received in 2005 as well as years not at issue.

[*26] because the payment came from the moneys obtained from those homes sold, i.e., profits. However, this argument must fail because such a method of accounting does not clearly reflect income. See sec. 446(b). Allowing Frontier to allocate the bonus distribution in this manner would create a distorted view of Frontier's income. Most of Frontier's costs and expenses are likely paid from its sales proceeds. If Frontier's purported cost allocation method were allowed, all production costs could escape capitalization under section 263A with a simple journal entry (i.e., saying payments came out of profits from homes sold as opposed to cash on hand). Similarly, this would hold true for all taxpayers subject to section 263A. If we were to adopt this view, it would be a rare phenomenon for any taxpayer to ever be required to capitalize production (or reseller) costs. Accordingly, we hold that Mr. Bopp's yearend profit-sharing bonus is a mixed-service cost, the same as his regular annual salary.

E. Employee Compensation

1. Employee Bonuses

Frontier makes the same argument for deducting the yearend profit-sharing bonuses paid out to its employees that it made for Mr. Bopp's bonus distribution. We deny this claim for the same reasons we denied it for Mr. Bopp's

[*27] bonus distribution. Therefore, these bonuses will be accorded the same treatment as the regular salary payments made to each respective employee.

2. Project Managers

Frontier claims the project managers' compensation should not be capitalized because they perform sales, marketing, and warranty services. Frontier further justifies its position by asserting its project managers did not do any of the construction work themselves, i.e., they did not hammer any nail or lay any wood. In support of the sales and marketing claim, Frontier argues that project managers are the first point of contact for customers and often have the opportunity to sell upgrades such as better quality windows for more energy efficiency or added service on blinds or shutters and to simply remind the customers that Frontier has a furniture department where they can get accessories and furniture.

Respondent does not dispute the deductibility of the warranty bonuses. Accordingly, those expenses are deductible. Respondent does however dispute the deductibility of the salaries and yearend bonuses. We have already addressed the treatment of all employee bonuses under the previous heading, so we will focus only on the salary expense.

It is irrelevant that the project managers did not hammer any nail or otherwise engage in physical construction. Project managers were responsible for

[*28] overseeing the actual physical construction of homes and ensuring each home was built per design and in conformity with building standards. They also chose and approved the replacement suppliers and vendors, subject to Mr. Bopp's review. Frontier asserts that the project managers' duties, at least in part, fall under "marketing, selling, or advertising". See sec. 1.263A-1(e)(4)(iv)(N), Income Tax Regs. Frontier relies on testimony stating how project managers often had the opportunity to sell upgrades. However, Frontier points to no evidence showing that project managers in fact sold upgrades. Frontier has also failed to produce any contemporaneous time records showing how many hours Frontier's project managers spent on their various activities, e.g., supervising construction versus selling upgrades.

Direct labor costs include the costs of labor that can be identified or associated with particular units or groups of units of specific property produced. Sec. 1.263A-1(e)(2)(i)(B), Income Tax Regs. Mr. Bopp's own testimony indicated that building homes was the primary responsibility of the project managers.[8] He also testified that project managers would work on 8 to 10 homes at a time and that

---

[8]Direct examination of Mr. Bopp:

Q: Who has primary responsibility for building homes?

A: The project managers.

**[*29]** they could complete the build of a home in about six months.[9] Therefore, we find the project managers' duties are direct costs as the cost of their labor can be identified with particular groups of homes (i.e., the 8 to 10 homes each project manager worked on). Accordingly, we find the project managers' compensation must be fully capitalized under section 263A.

### 3. Designers and Decorators

Frontier contends the compensation paid to Frontier's designers and decorators is deductible because their services relate to exempt or deductible activities. According to Frontier, its design and sales functions overlapped. Frontier claims the designers were incorporated into the sales process to increase sales, while the decorators worked alongside the sales team to entice customers to purchase upgrades.

---

[9]Direct examination of Mr. Bopp:

> Q: How many homes is a project manager responsible for at a time?
>
> A: You know, a typical project manager should be able to run between eight to ten homes annually--I mean at a time.
>
> Q: How long does it take to manage the building of a home?
>
> A: To complete a home, the typical build time is approximately six months.

[*30] Respondent does not dispute the deductibility of the warranty-work bonuses paid to both the designers and decorators. Accordingly, those expenses are deductible.

The record shows the designers designed homes using AutoCAD software, including designing electrical wiring, plumbing, staircases, elevations, structural plans, doors, windows, glass blocks, floors, and driveways. It also shows the design services were provided outside of the homebuilding contract, and a client using these services could walk away from Frontier and use that design with another builder.

The record shows the decorators met with clients to discuss what selections they wanted in their homes, i.e., creating an opportunity for upgrading tile selections, light fixtures, window treatments, etc. Both designers and decorators worked closely with the project managers throughout the homebuilding process.

Frontier did not produce contemporaneous time records to show how many hours these employees actually spent on activities related to marketing, advertising, or selling any homes, nor did it produce any records detailing what portion of design services was provided that did not end up attaching to a custom home built by Frontier. Nothing in the record supports the claim that the designers and decorators actually made any sales in the performance of their duties. It merely

[*31] shows that there was an opportunity created for suggesting upgrades while talking to clients about which features the construction crew should build into the custom home. The costs incurred during the production process for the designers' work[10] --designing electrical wiring, plumbing, staircases, structural plans, etc.-- and the decorators' work--upgrading tile selections, window treatments, etc.--are indirect costs that directly benefited or were incurred by reason of Frontier's production activities.

Therefore, we find these costs must be capitalized as indirect costs properly allocable to produced property as the costs directly benefited or were incurred by reason of the performance of production activities. Sec. 1.263A-1(e)(3)(i), Income Tax Regs.

### 4. Elisa Wolfe

Ms. Wolfe, Mr. Bopp's administrative assistant, was paid both a regular salary and a yearend bonus.

Respondent argues Ms. Wolfe's compensation should be characterized the same as Mr. Bopp's compensation because she assisted Mr. Bopp in his daily

---

[10]Sec. 1.263A-1(e)(3)(ii)(P), Income Tax Regs., specifically identifies design work as an indirect cost required to be capitalized.

[*32] duties, which we found to be partially production related and partially nonproduction related. Frontier argues her compensation is deductible in full.

Because Frontier maintained no contemporaneous time records detailing the hours Ms. Wolfe spent on her designated duties, we agree her compensation should be treated very similarly to that of Mr. Bopp, whom she assisted day after day. Therefore, we agree that Ms. Wolfe's duties were partially production related and partially nonproduction related. Accordingly, her compensation is a mixed-service cost, the same as Mr. Bopp's compensation.

### 5. Charlotte Guarino

Ms. Guarino was in charge of accounts receivable, client billings, payroll, and some tax preparation. Frontier argues that her salary and bonus are deductible under section 1.263A-1(e)(4)(iv)(C), Income Tax Regs., as general accounting services.

Respondent does not dispute that managing accounts receivable, client billings, and tax preparation are all deductible service costs. Sec. 1.263A-1(e)(4)(iii)(E), (iv)(C), (M), Income Tax Regs. Therefore, Frontier may deduct her compensation to the extent it relates to these services.

However, per section 1.263A-1(e)(4)(iii)(E), Income Tax Regs., Frontier must capitalize her compensation to the extent it relates to Frontier's payroll

**[*33]** functions that are allocable to Frontier's production activities. Accordingly, her compensation is a mixed-service cost as it is partially allocable to production activities and partially allocable to nonproduction activities. <u>See</u> sec. 1.263A-1(e)(4)(ii)(C), Income Tax Regs.

### 6. <u>Sandra Alvarado</u>

Ms. Alvarado was paid to convert the construction, general administration, and decorating manuals into online PDFs. Frontier claims the manuals pertain to design, construction, decorating, sales, and general administration making Ms. Alvarado's compensation deductible under section 1.263A-1(e)(4)(iv)(F), Income Tax Regs., as quality control policy services.

Respondent contends that Ms. Alvarado's compensation expense should be treated as a mixed-service cost to the extent the costs directly benefit production (e.g., construction, design, and decoration).

Section 263A applies to costs properly allocable to tangible personal property produced by the taxpayer. Sec. 1.263A-1(a)(3), Income Tax Regs. Frontier produced company handbooks and manuals--i.e., tangible personal property. Costs incurred to create personnel policy or quality control policy are not generally allocated to production activities. Sec. 1.263A-1(e)(4)(iv)(E) and (F), Income Tax Regs. Respondent relies on the parenthetical in section 1.263A-

**[\*34]** 1(e)(4)(iv)(E), Income Tax Regs.,[11] for the notion that these manuals fall short of the exception in the regulations because they relate to production of the custom homes. However, the parenthetical is clear that establishing and managing personnel policy in general is a deductible service. The qualifying language (i.e., "unrelated to particular production or resale activities") respondent relies on is applicable only to the development of employee training programs.

The manuals Mr. Bopp created were not created for employee training programs. They were created as a general personnel policy guide and as a reference for maintaining good-quality homes. Therefore, we find the policymaking Mr. Bopp engaged in fits within section 1.263A-1(e)(4)(iv)(E) and (F), Income Tax Regs. Because Ms. Alvarado was just converting the policy manuals Mr. Bopp created, we find this cost should be given the same treatment. But see Domestic Mgmt. Bureau, Inc. v. Commissioner, 38 B.T.A. 640, 644 (1938). Accordingly, the costs incurred to have Ms. Alvarado convert Frontier's policy manuals are fully deductible.

---

[11] (E) Personnel policy (such as establishing and managing personnel policy in general; developing wage, salary, and benefit policies; developing employee training programs unrelated to particular production or resale activities; negotiating with labor unions; and maintaining relations with retired workers).

**[\*35]**       7. <u>Jason Belden</u>

Frontier paid Mr. Belden a salary and a profit-sharing bonus as Frontier's information technology specialist. Mr. Belden modified and improved the programming for the company's Web site. The Web site was designed to inform clients about amenities Frontier offered. And according to Mr. Bopp's own testimony, it also helped him keep track of change orders and follow leads.

Respondent argues that Mr. Belden's compensation is a mixed-service cost as his work benefited both sales and production.[12] <u>See</u> sec. 1.263A-1(e)(4)(ii)(C), Income Tax Regs. Frontier asserts that this Web site only provided information for customers and therefore argues for full deductibility. However, the record reflects this cost relates to more than just marketing homes to customers. In his testimony, Mr. Bopp admitted that Frontier used the Web site for internal uses such as referencing change orders and following leads. Therefore, Mr. Belden's compensation for reprogramming the Web site is a mixed-service cost as it is partially allocable to production activities and partially allocable to nonproduction activities. <u>See</u> <u>id.</u>

---

[12]Respondent agrees the Web page maintenance cost of $2,653 was a deductible expense.

**[*36]** F.  Carrying Costs

Frontier capitalized 2005 carrying costs consisting of HOA fees, property taxes, interest, utilities, and insurance.  Frontier now wishes to change its accounting so these costs will be treated as having been deducted for 2005, not capitalized.[13]  Frontier argues these costs were paid to maintain homes after the completion of the homebuilding project and therefore cannot be deemed production related.

When a taxpayer in a court proceeding retroactively attempts to alter the manner in which he accounted for an item on his tax return, the taxpayer cannot prevail if consent for the change in accounting method has not been secured.  Sec. 446(e);  S. Pac. Transp. Co. v. Commissioner, 75 T.C. 497, 682-683 (1980). Frontier did not submit Form 3115 to respondent to seek permission to change its method of accounting for these costs, and it has not received permission. Accordingly, Frontier may not now change its method of accounting for its claimed carrying costs.

---

[13]These costs were properly capitalized for 2005 as the regulations specifically require carrying costs to be capitalized as an indirect cost.  Sec. 1.263A-1(e)(3)(ii)(H), Income Tax Regs.

**[*37]** G. <u>Other Expenses</u>

        1. <u>Taxes</u>

Frontier deducted its employees' payroll tax expenses and owner's payroll tax expenses for 2005. Respondent argues the employees' payroll tax expenses should be allocated among capitalizable, deductible, and mixed-service costs in accordance with the treatment afforded to each respective group of employees. Respondent also argues the owner's payroll tax expenses should be treated the same as Mr. Bopp's compensation--partially allocable to production activities and partially allocable to nonproduction activities.

Taxes otherwise allowable as deductions shall be capitalized as an indirect cost to the extent they are attributable to labor used in production. Sec. 1.263A-1(e)(3)(ii)(L), Income Tax Regs. Frontier's employees' payroll tax expenses and owner's payroll tax expenses are attributable to Frontier's labor force. To the extent the labor contributed to the production of custom homes, those taxes must be capitalized. Therefore, we agree with respondent. The employees' payroll tax expenses shall be allocated among capitalizable, deductible, and mixed-service costs in accordance with the treatment afforded to each respective group of employees; the owner's payroll tax expenses shall be treated as a mixed-service cost, the same as Mr. Bopp's compensation.

**[\*38]**       2. <u>Employee Benefit Program</u>

Frontier deducted employee benefit program costs in full for 2005. These costs related to health insurance for Frontier's employees. Premiums on health insurance and miscellaneous benefits provided for employees such as safety and medical treatment are indirect costs that must be capitalized to the extent they are properly allocable to property produced. Sec. 1.263A-1(e)(3)(ii)(D), Income Tax Regs. Not all of Frontier's employees performed production-related duties. Therefore, like the employees' payroll taxes, these costs should be allocated among deductible, capitalizable, and mixed-service costs in accordance with the treatment afforded to each respective group of employees.

       3. <u>Insurance</u>

Frontier deducted costs for builder's risk insurance, general liability insurance, and vehicle insurance on the car Mr. Bopp drove in furtherance of Frontier's activities. In response to respondent's request for admissions, Frontier admitted that the vehicle insurance was an indirect cost. Insurance costs are an indirect cost that must be capitalized to the extent they are properly allocable to property produced. Sec. 1.263A-1(e)(3)(ii)(M), Income Tax Regs. We earlier determined Mr. Bopp's activities are partially allocated to production-related activities and partially allocated to non-production-related activities. Therefore,

**[*39]** the vehicle he used in furtherance of those activities should be afforded the same treatment as the activities for which he used the vehicle. Accordingly, we find the vehicle insurance expense shall be accorded the same calculated allocation as Mr. Bopp's compensation.

Mr. Bopp testified that the builder's risk insurance covered the building of homes. This is clearly production related. Therefore, the builder's risk insurance cost must be capitalized.

Frontier claims that the general liability insurance was an umbrella policy for the whole corporation and used for issues like copyright infringement, advertising claims, tort liability, etc. Frontier asserts that it benefited all of Frontier's departments and benefited production activities (which used builder's insurance) only at a de minimis level. See sec. 1.263A-1(b)(11)(iii), (g)(4)(ii), Income Tax Regs.

Respondent agrees that the general liability insurance was an umbrella policy, but he asserts that it covered incidents arising from the production of homes and thereby capitalizes the full expense. Respondent relies on section 1.263A-1(e)(3)(ii)(M), Income Tax Regs.

Section 1.263A-1(e)(3)(ii)(M), Income Tax Regs., provides that the cost of insurance on plant or facility, machinery, equipment, materials, or property

**[*40]** produced is an indirect cost that must be capitalized to the extent it is properly allocable to property produced. By Frontier's own admission, the general liability insurance covers departments that are production related. Because Frontier has produced no documentation to substantiate its de minimis claim, we disagree that it falls outside the scope of section 263A. Section 1.263A-1(e)(4)(iii)(A), Income Tax Regs., also requires capitalization of general administration costs of production activities incurred. It therefore follows that the general liability insurance is partly allocable to production-related departments and partly allocable to non-production-related departments like the other expenses that apply company wide (e.g., taxes, employee benefits, office expenses, and utilities). Thus, we find the proper calculation for the general liability insurance is to allocate that expense among deductible, capitalizable, and mixed-service costs in accordance with the treatment afforded to each respective department covered by the general liability insurance.

### 4. Vehicle Expenses

Frontier deducted vehicle expenses related to the vehicle Mr. Bopp drove for the company in 2005. He drove his company-provided vehicle only for business. For the same reasons we find the vehicle insurance expense partially allocable to production activities and partially allocable to nonproduction activities, we find the

[*41] same treatment proper for the vehicle expenses. Therefore, because Mr. Bopp used his company vehicle in the performance of his duties, the vehicle expenses are a mixed-service cost the same as Mr. Bopp's compensation.

### 5. Office Expenses

Frontier deducted office expenses incurred for models, sales offices, and the main office. Mr. Bopp testified that this expense covered things like telephone and Internet charges for models, sales offices, and the main office. Because we address the office telephones separately below, these office expenses will refer to all office expenses excluding the office telephones. Frontier states that these offices were rarely if ever used by project management staff. Consequently, it is argued that only a de minimis portion of the expenses could be said to be allocable to production. See sec. 1.263A-1(b)(11)(iii), (g)(4)(ii), Income Tax Regs.

Because Frontier acknowledges some portion of these expenses is allocable to production and did not provide any substantiation for its claim that that portion is de minimis, we find these expenses partially allocable to production-related activities and partially allocable to non-production-related activities. Respondent argues these expenses should be allocated among capitalizable, deductible, and mixed-service costs using the ratio of each category of employee compensation to total compensation. We agree this is a good way of allocating the expense to

**[*42]** identify which services (production related versus nonproduction related) the expenses attached to. Accordingly, the office expenses shall be allocated among deductible, capitalizable, and mixed-service costs in accordance with the treatment afforded to each respective group of employees.

### 6. Mobile Telephone Expenses

Frontier deducted mobile telephone expenses relating to sales offices, sales personnel, the corporate office, and project managers. Frontier argues only 10% of this expense is allocable to production-related operations and it is therefore fully deductible under the de minimis rule. See id. Because Frontier produced no documentation substantiating this claim, we find the basis of its argument insufficient.

The record indicates mobile telephones were used partially in production activities and partially in nonproduction activities. Respondent allocates 79% of the mobile telephone expense to production activities by dividing the total compensation expense of $536,875 for project managers and decorators by the total compensation expense of $679,131 for project managers, decorators, and salespeople. We stated above that the project managers' and decorators' compensation is a capitalizable expense; therefore, we find this formula acceptable.

[*43] Accordingly, 79% ($536,875/$679,131 = 79%) of the mobile telephone expense shall be capitalizable.

### 7. Office Telephone Expenses

Frontier deducted office telephone expenses relating to the models and main offices. Frontier claims the project managers seldom used the office telephones, if ever. Respondent disagrees with Frontier's claim and maintains the telephone expense should be allocated among capitalizable, deductible, and mixed-service costs per section 1.263A-1(e)(3)(ii)(N), Income Tax Regs.[14] We agree with Frontier that because the project managers had company-provided mobile telephones, they would seldom use office phones, if ever. However, the project managers were not the only people in these offices. Therefore, the telephones benefited both the production-related and non-production-related services being conducted from the offices and models. Accordingly, the office telephone expenses are allocable among deductible, capitalizable, and mixed-service costs the same as the other office expenses discussed above.

---

[14]Utilities, including the cost of electricity, are an indirect expense required to be capitalized to the extent they are properly allocable to property produced.

[*44]        8. Tool Expenses

Frontier deducted tool expenses for 2005 for miscellaneous tools used on the job. Frontier justifies this deduction by saying they were used in the company's sales function since they were used to repair the model homes, which were used as a selling tool. Tools and equipment, as well as the costs for repairs and maintenance, are capitalizable indirect costs to the extent they are properly allocable to property produced. Sec. 1.263A-1(e)(3)(ii)(O), (R), Income Tax Regs. Frontier built (i.e., produced) these model homes and, as the record indicates, sold a few to customers in 2005. These expenses are therefore production related and should be capitalized in full.

        9. Annual Retreat (Training and Seminars)

Frontier incurred a cost, including travel costs, for its annual all-employee training seminar in 2005. The all-employee training seminar was an annual three-day retreat for its employees. It was used for teambuilding; discussing what the company could do better, future opportunities, and ways to improve processes throughout the company; going over financials; and reviewing invoices in a way that allowed the entire team (accounting, project managers, and sales staff) to understand the process.

[*45] Costs associated with personnel policy (such as developing employee training programs unrelated to particular production activities) are a deductible expense. Sec. 1.263A-1(e)(4)(iv)(E), Income Tax Regs. Reviewing invoices so that members of a production team can understand the invoicing process or discussing ways the company can more efficiently build homes seems to be production related on its face; however, we find in this instance it is not. It does not simply need to be related to production in the general sense to require capitalization; rather, it has to be related to "particular production activities". Reviewing an invoice from some project done earlier in the year so that a team can fully understand the company's internal procedures for invoicing is not related to a particular production activity. Neither is sitting in a circle discussing ways the company can build homes more efficiently. Therefore, we find the annual retreat was geared towards teambuilding and developing ideas for better efficiency; more importantly, it was unrelated to any particular production activity. Accordingly, the annual retreat expense is a deductible expense.

With regard to the travel expense, respondent's allocation characterizes it as a partially capitalizable, partially deductible, and mixed-service cost. Frontier argues this expense should be deductible in the same manner as the rest of the expenses related to the annual retreat. Because we find the annual retreat unrelated

[*46] to a particular production activity and therefore nonproduction related, we see no reason why the travel expense should not enjoy the same treatment. Therefore, the travel expense is a deductible expense.

### 10. Utility Expenses

Frontier deducted expenses for utilities. These expenses pertained only to model homes and the main office. Similar to its brief justification with the tools expense, Frontier merely states that this cost related to model homes and therefore should be fully deductible.

Under section 1.263A-1(e)(3)(ii)(N), Income Tax Regs., utilities such as gas, electricity, and water are indirect costs that must be capitalized to the extent they are properly allocable to property produced. Since these utility expenses related to both model homes--produced and held for sale to customers--and the main office, they are properly allocable to production-related and nonproduction-related property. Accordingly, like the office expenses, the utility expenses shall be allocated among deductible, capitalizable, and mixed-service costs.

### 11. Computer Maintenance Expenses

Frontier deducted computer maintenance expenses. These expenses related to repairing existing computer equipment and keeping systems updated.

**[\*47]** Computers were maintained for designers and salespeople in model homes. All models had computers and all design work required computer systems.

Frontier claims the full expense amounts are deductible because they primarily related to model homes and design work at its main office. Respondent argues the expenses are 65% capitalizable. He arrives at this percentage by dividing the designers' production-related compensation of $231,567 by the total compensation for designers and salespeople, including the noncapitalizable bonus for designers, of $354,048.

These computer maintenance expenses are partially allocable to production-related activities as the designers used these computers and systems to design homes in the production phase. But these expenses are also partially allocable to non-production-related activities as they were used in model homes by salespeople. Therefore, we agree with respondent's calculation and find the computer maintenance expense to be 65% capitalizable.

III. Mitigation

Section 1311 provides for the correction of the effect of certain errors under circumstances specified in section 1312 when one or more provisions of law, such as the statute of limitations, would otherwise prevent such correction. The overriding purpose of these provisions is to permit an equitable adjustment by

**[\*48]** treating an error as if it had never existed. O'Donnell v. Belcher, 414 F.2d 833 (5th Cir. 1969). The party invoking the mitigation provisions carries the burden of proving the specific requirements are met. Olin Mathieson Chem. Corp. v. United States, 265 F.2d 293 (7th Cir. 1959).

Frontier makes a claim for relief under the mitigation provisions because once it makes the necessary corrections to its capital account, it will have an increase in basis for 2005 which will result in the corporation's also capitalizing a larger amount in the following years. Consequently, Frontier hopes to use the mitigation provisions to make an adjustment for one or more of those later years.

While it is true that "it is important that the mitigation provisions be given a liberal and remedial interpretation", see O'Brien v. United States, 766 F.2d 1038, 1042 (7th Cir. 1985), it is also true that "'[t]he danger of an over-liberal interpretation of statutory purpose is reduced, at least to some extent, by the necessity for fitting the facts of each case into the concrete, detailed requirements set out in the statute'", Belcher, 414 F.2d at 839 (quoting United States v. Rachal, 312 F.2d 376, 383 (5th Cir. 1962)).

Section 1311 applies only if a determination as defined in section 1313 is described in one or more paragraphs of section 1312. Section 1313(a)(1) defines the term "determination" to include a decision by the Tax Court which has become

**[\*49]** final.  Finality of Tax Court decisions is provided for in section 7481.  Estate

of Mueller v. Commissioner, 101 T.C. 551, 557 (1993).  Section 7481 provides a

decision will become final either (1) upon the expiration of the time allowed for

filing a notice of appeal, if no such notice has been duly filed within that time, or

(2) when this decision is affirmed or the appeal is dismissed.

Frontier asks this Court to grant equitable relief under the mitigation

provisions with an eye toward the date when the decision in this case becomes

final.  That, however, is not consistent with the clear provisions of sections 1313(a)

and 7481.[15]

---

[15]Taylor v. Commissioner, 258 F.2d 89 (2d Cir. 1958) (holding Tax Court was without jurisdiction to grant or deny relief under the mitigation provisions; decision of the Tax Court does not become final until the means of appellate review have been exhausted or barred by the passage of time), aff'g 27 T.C. 361 (1956); Wiener Mach. Co., Inc. v. Commissioner, 16 T.C. 48, 54 (1951) ("The bringing of this proceeding to this * * * [Tax] Court and a decision by this Court which becomes final is a first step in * * * [the taxpayer's] obtaining relief from * * * [the Commissioner] under * * * [sec. 1311-1314]."); Dolenz v. Commissioner, 41 B.T.A. 1091, 1101 (1940) ("Upon study of the statute and the Congressional Committee Reports * * * we have no jurisdiction to make the desired adjustment.  The statute provides for adjustment after the date the determination becomes final.").

**[*50]** In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.